1

2

3

4

5

6

7

8                    **UNITED STATES DISTRICT COURT**

9                    **CENTRAL DISTRICT OF CALIFORNIA**

10

11  **BARBARA INGRAM,**                    )     **NO. CV 05-7946-MAN**
                                           )
12              **Plaintiff,**             )
                                           )     **MEMORANDUM OPINION AND ORDER**
13         **v.**                          )
                                           )
14  **MICHAEL J. ASTRUE,**[1]              )
    **Commissioner of the**               )
15  **Social Security Administration,**    )
                                           )
16              **Defendant.**             )
                                           )
17  ─────────────────────────────────     )

18       Plaintiff filed a Complaint on November 14, 2005, seeking review of

19  the denial by the Social Security Commissioner ("Commissioner") of her

20  claim for supplemental security income benefits ("SSI").  On December

21  20, 2005, the parties consented to proceed before the undersigned United

22  States Magistrate Judge, pursuant to 28 U.S.C. § 636(c).  The parties

23  filed a Joint Stipulation on September 8, 2006, in which:  Plaintiff

24  seeks an order reversing the Commissioner's decision denying benefits

25  and directing the payment of benefits or, alternatively, remanding the

26

27       [1]   Michael J. Astrue became the Commissioner of the Social

28  Security Administration on February 12, 2007, and is substituted in
    place of former Commissioner Joanne B. Barnhart as the Defendant in this
    action.  (*See* Fed. R. Civ. P. 25(d)(1); Section 205(g) of the Social
    Security Act, last sentence, 42 U.S.C. § 405(g).)

1  case for further proceedings; and Defendant requests that the
2  Commissioner's decision be affirmed.  The Court has taken the parties'
3  Joint Stipulation under submission without oral argument.

4

5                    **SUMMARY OF ADMINISTRATIVE PROCEEDINGS**

6

7      Plaintiff filed an application for SSI on July 16, 2001.
8  (Administrative Record ("A.R.") 374-76.)  Plaintiff claims to have been
9  disabled since January 1, 1977, due to hypertension, mental illness,
10 back aches, leg weakness, and lower abdominal pain.  (A.R. 19, 333,
11 384.)  She has no past relevant work experience.  (A.R. 21.)

12

13     The Commissioner denied Plaintiff's claim for benefits initially
14 and upon reconsideration.  On January 17, 2003, Plaintiff, who was
15 represented by counsel, appeared and testified at a hearing before
16 Administrative Law Judge Alexander Weir III ("ALJ").  (A.R. 615-38.)  On
17 May 28, 2003, the ALJ denied Plaintiff's SSI claim.  (A.R. 332-40.)

18

19     On December 10, 2003, the Appeals Council remanded the case to the
20 ALJ, noting that the ALJ failed to resolve the questions concerning the
21 authenticity of the questionnaire purportedly completed by Plaintiff's
22 treating psychiatrist, Norma Aguilar, M.D., and failed to address the
23 severity of Plaintiff's mental impairments pursuant to the governing
24 regulations.  (A.R. 341.)  The Appeals Council expressly directed the
25 ALJ to:  1) obtain additional evidence regarding Plaintiff's physical
26 and/or mental impairments in order to complete and update the
27 administrative record; 2) further consider the severity of Plaintiff's
28 impairments; 3) obtain evidence, as appropriate from a vocational expert

                                    2

to clarify the effect of Plaintiff's limitations on her occupational base; and 4) evaluate Plaintiff's subjective complaints in accordance with the governing authority.  (A.R. 341-42.)

In a December 11, 2004 written decision, the ALJ again denied Plaintiff's claim for benefits, and on September 9, 2005, the Appeals Council denied Plaintiff's request for review of the decision.  (A.R. 9-11, 19-32.)

**SUMMARY OF ADMINISTRATIVE DECISION**

In his December 11, 2004 written decision, the ALJ found that Plaintiff has not engaged in substantial gainful activity since her alleged onset of disability.  (A.R. 31.)  In addition, the ALJ found that Plaintiff was not credible for the reasons set forth in the body of his decision.  (A.R. 32.)

The ALJ found that Plaintiff has physical impairments, consisting of hypertension, a history of pneumonia, a history of Hepatitis B infection, and degenerative disc disease, but these impairments, considered singly and in combination, do not have more than a minimal effect on Plaintiff's work ability and, therefore, do not constitute a "severe" physical impairment.  (A.R. 31.)  The ALJ further found that Plaintiff has mental impairments, consisting of depression and alcoholism, which are "severe." (*Id.*)  In addition, the ALJ found that when Plaintiff is actively abusing alcohol, her alcohol abuse has a marked impact on her activities of daily living, social functioning, and ability to maintain concentration, persistence, and pace, but does not

3

1  cause episodes of decompensation of extended duration. (*Id*.) The ALJ
2  concluded that Plaintiff's alcoholism renders her disabled under Listing
3  12.09, Appendix 1, Subpart P of Regulations No. 4. (*Id*.) However, the
4  ALJ further concluded that, absent alcohol abuse, Plaintiff would not
5  have a "severe" impairment and would not be disabled. (*Id*.)
6  Accordingly, the ALJ found that Plaintiff is not entitled to SSI. (A.R.
7  32.)

8
9                          **STANDARD OF REVIEW**
10
11      This Court reviews the Commissioner's decision to determine
12  whether it is free from legal error and supported by substantial
13  evidence. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996). The
14  Commissioner's decision must stand if it is supported by substantial
15  evidence and applies the appropriate legal standards. Saelee v. Chater,
16  94 F.3d 520, 521 (9th Cir. 1996). Substantial evidence is "more than a
17  mere scintilla but less than a preponderance -- it is such relevant
18  evidence that a reasonable mind might accept as adequate to support the
19  conclusion." Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995).
20
21      Although this Court cannot substitute its discretion for that of
22  the Commissioner, this Court nonetheless must review the record as a
23  whole, "weighing both the evidence that supports and the evidence that
24  detracts from the [Commissioner's] conclusion." Desrosiers v. Secretary
25  of Health and Human Serv., 846 F.2d 573, 576 (9th Cir. 1988); *see also*
26  Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). "The ALJ is
27  responsible for determining credibility, resolving conflicts in medical
28  testimony, and for resolving ambiguities." Andrews v. Shalala, 53 F.3d

                                    4

1035, 1039-40 (9th Cir. 1995).  This Court must uphold the
Commissioner's decision if it is supported by substantial evidence and
free from legal error, even when the record reasonably supports more
than one rational interpretation of the evidence.  *Id*. at 1041; *see also*
Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir.
1999); Flaten v. Secretary, 44 F.3d 1453, 1457 (9th Cir. 1995).

**DISCUSSION**

Plaintiff alleges one issue:  she contends that the ALJ erred in
rejecting the opinion of her treating psychiatrist, Dr. Aguilar, in
finding that Plaintiff does not have a "severe" mental impairment in the
absence of alcohol abuse.  (Joint Stip. at 4.)

"An impairment or combination of impairments can be found 'not
severe' only if the evidence establishes a slight abnormality that has
'no more than a minimal effect on [a claimant's] ability to work.'"
Smolen, 80 F.3d at 1290 (citing Social Security Ruling 85-28 and Yuckert
v. Bowen, 841 F.2d 303 (9th Cir. 1988)). *See also* 20 C.F.R. § 416.921
("[a]n impairment or combination of impairments is not severe if it does
not significantly limit your physical or mental ability to do basic work
activities."); Bustamante v. Massanari, 262 F.3d 949, 955-56 (9th Cir.
2001)(ALJ's finding that claimant's mental impairment was not severe was
not supported by substantial evidence, because every mental health
professional who examined claimant found significant mental problems).
The "severity" requirement is merely "a *de minimis* screening device to
dispose of groundless claims." Edlund v. Massanari, 253 F.3d 1152, 1158
(9th Cir. 2001).  "[A] claim may be denied at step two only if . . . a

5

finding [that the relevant impairments are not medically severe] is *clearly established by medical evidence*." Social Security Ruling 85-28 (emphasis added).

Plaintiff contends that the ALJ erred at Step Two in finding that she has no "severe" impairment. (Joint Stip. at 4-6, 10.) Plaintiff further contends that, in so finding, the ALJ failed to adequately consider the opinion submitted by her treating physician, Dr. Aguilar. (*Id.*)

In finding that Plaintiff had no "severe" mental impairment in the absence of her alcohol abuse, the ALJ stated:

> The evidence of [Plaintiff's] mental impairment reflects that [Plaintiff] has a history of alcohol abuse as well as a diagnosis of mental depression with psychotic features. [Plaintiff] admitted recent drinking at the hearing in January 2003, but told the psychiatric examiner on March 13, 2004, that she had not had a drink of alcohol in seven years. However, two days before, on March 11, 2004, she appeared actively intoxicated to the consultative psychological examiner and was unable to complete psychological tests. She told the psychological examiner that she had not had a drink in two years. [Plaintiff] did not appear at the hearing on July 29, 2004 despite filing an acknowledgment from the previous month indicating that she would appear at this hearing. I conclude from this evidence that [Plaintiff] is not credible.

6

I discount and give little weight to the evidence of [Plaintiff's] mental impairment indicated by the questionnaire signed by social worker Curry (whom [Plaintiff] identified as her treating therapist to Dr. Donahue) and Dr. Aguilar. This evaluation form does not match the records of treatment from the mental health facility where [Plaintiff] received mental health treatment in several respects. It states [Plaintiff] received bi-weekly psychiatric therapy from August 1996 through January 2003. However treating records reflect that [Plaintiff] presented for treatment in August 1996 and then did not appear for scheduled therapy sessions and was finally discharged from therapy in December 1996 because of her failure to participate in therapy. She returned for therapy in December 1997, and had roughly monthly therapy visits until October 1998 and then was simply managed on medication without therapy. The questionnaire does not refer to [Plaintiff's] use of alcohol, although her intake assessment notes a history of alcohol abuse. The questionnaire also indicates that [Plaintiff] has severe symptoms and active hallucinations. However the progress notes and medication logs from treatment reflect that [Plaintiff] is adequately managed on medication and reported feeling better with no auditory hallucinations following her use of the medication. Because of these inconsistencies and the questions about the authenticity of the document, as discussed in my decision of May 28, 2003, I again give this questionnaire very little weight.

The evidence of [Plaintiff's] mental impairment suggests

7

that [Plaintiff] has mental depression and active alcohol abuse.  When [Plaintiff] is actively drinking, I conclude that her mental limitations would be significant and would markedly limit her ability to perform daily living activities, function socially and maintain concentration, persistence and pace.  As such [Plaintiff's] mental impairment would qualify as a severe impairment and would also meet the criteria of listing 12.09 of Appendix 1, Subpart P of Regulations No. 4.

However, when the evidence is considered without regard to [Plaintiff's] alcohol use, that is, as if [Plaintiff] were to stop drinking, the evidence suggests that [Plaintiff's] mental impairment is essentially mild in severity.  Two psychiatric consultative examiners and the State Agency psychiatric consultant have opined that [Plaintiff's] mental impairment would have only slight or mild limitations on her ability to perform basic work activities.  I conclude that, when [Plaintiff's] use of alcohol is disregarded, her mental impairment at the most has only a mild impact on her activities of daily living, social functioning and ability to maintain concentration, persistence and pace.  It has not caused any episodes of decompensation of extended duration.  Therefore [Plaintiff] does not have a severe impairment (20 CFR 416.920a(d)(1)).

(A.R. 30-31.)

In the ALJ's prior May 28, 2003 decision, he stated, with respect

8

to Dr. Aguilar's January 16, 2003 assessment:

> The record also contains a mental health questionnaire completed by [Plaintiff's] alleged treating psychiatrist, Norma Aguilar, M.D., on January 16, 2003 (Exhibit C-11F). However this questionnaire is essentially the same as one that was allegedly completed by Dr. Aguilar on September 21, 1998 and submitted to Judge Steverson (Exhibit 31). I note that Judge Steverson had doubts about the authenticity of that questionnaire, finding that the reports attributed to Dr. Aguilar were completed by another individual (Exhibit A-3 at p. 5). I have similar doubts about the authenticity of the questionnaire allegedly completed by Dr. Aguilar and presented to me (Exhibit C-11F). This questionnaire does not contain Dr. Aguilar's signature. It does contain the signature of another individual, Mitchell Currry, Ph.D., L.C.S.W. in its "additional comments" section. It also appears to be in handwriting different from the handwriting on the questionnaire that was submitted to Judge Steverson (Exhibit 341). I note that [Plaintiff] told the consultative psychiatric examiner, Dr. Musher, in her examination on September 28, 2001, that she has been seeing a psychiatrist but could not recall "his" name (Exhibit C-6F, pp.1-2). [Plaintiff] did not include Dr. Aguilar's name on her disability report as her treating psychiatrist (Exhibit C-1E, p. 4). I also note that records from Los Angeles County Department of Mental Health include some notes signed by Dr. Aguilar, but these appear to be in a handwriting different

1    from that on the questionnaire (Compare Exhibit C-2F and pp.9-
2    23 with Exhibit C11F, pp.2-5).  Also the records from Los
3    Angeles County Department of Mental Health do not support the
4    severity of [Plaintiff's] mental impairment that is indicated
5    in the questionnaire purported[ly] signed by Dr. Aguilar.  The
6    questionnaire also includes a psychiatric diagnosis that is
7    inconsistent with the records of treatment at Los Angeles
8    County Department of Mental Health.  The questionnaire
9    indicates a diagnosis of Major Depression with Psychotic
10   Features (diagnosis code 296.34) on Axis I and Avoidant
11   Personality Disorder with Schizotypical Features (diagnosis
12   code 301.82) on Aix II.  The records of treatment do not
13   include any reference to a personality disorder.  Accordingly
14   because of these problems I discount this questionnaire and
15   give it no weight.

17 (A.R. 335.)

19      In a September 21, 2004 Residual Functional Capacity Questionnaire
20 signed by Dr. Aguilar, Dr. Aguilar noted that Plaintiff had
21 "psychotherapy and medication, monthly," and diagnosed Plaintiff with
22 major depression with psychotic features and schizophrenia, paranoid
23 type, and listed symptoms of "depression, anxiety, insomnia, auditory
24 hallucinations (command and persecutory), delusions, headaches,
25 dizziness, poor memory, poor concentration, poor judgment, and insight."
26 (A.R. 586.)  Dr. Aguilar further noted that Plaintiff's major depression
27 and schizophrenia began at an early age:

28

10

1        Major Depression and Schizophrenia I onset at age 16,
2     precip[it]ated by early childhood depression, loss by death
3     and separation, social rejection and family history of Mental
4     Illness.   Daily depression, hallucinations and delusions;
5     Social and Emotional withdrawal.

6

7 (A.R. 586.)  Dr. Aguilar noted that Plaintiff's symptoms would
8 frequently interfere with her attention and concentration; she had a
9 "marked limitation" in her ability to deal with stress; and she would
10 need to be absent from work more than three times per month to seek
11 treatment.  (A.R. 588-90.)

12

13    In a September 21, 1998 Medical Assessment Form -- Mental, signed
14 by Dr. Aguilar, she noted that Plaintiff had "poor" abilities to:
15 relate to co-workers, deal with the public, interact with supervisors,
16 deal with work stresses, maintain attention and/or concentration,
17 understand, remember, and carry out complex and detailed but not complex
18 job instructions, maintain persistence and pace throughout the workday,
19 behave in an emotionally stable manner, and demonstrate reliability.
20 (A.R. 292-94.)  In an August 20, 1998 Evaluation signed by Dr. Aguilar,
21 she made the following observations:  "[Plaintiff] deals with serious
22 issues related to depression"; "she has discussed taking a substance to
23 self-medicate"; "she has difficulty with concentrating and completing
24 tasks unless supervised"; "[s]he's isolated from others"; "she has some
25 memory impairment and poor judgment" and "loses her concentration very
26 easily and [becomes] agitated at times"; "[s]he has suicidal ideations"
27 without a plan; "she is emotionally labile[,] . . . emotionally
28 withdrawn[,] . . . [and] showed bizarre behavior"; and "[is] hostile

11

towards others when she feels threatened." (A.R. 286-88.) She diagnosed Plaintiff with major depression with psychotic features and assessed her Global Assessment of Functioning ("GAF") at 38.[2] (A.R. 289.) In addition, Dr. Aguilar noted that Plaintiff: could understand simple, primarily oral instructions when they are "repeated over several times"; could not carry out instructions under ordinary supervision, because "[when she feels pressured she [cannot] concentrate on the task"; she could not get along adequately with fellow workers and supervisors if her contact with them was even minimal, because "she wants to do things in her own way only"; and "she could not maintain adequate attendance for a low-stress job, because "she now needs others to remind her [about her doctor] and supportive therapy appointment[s]." (A.R. 290.)

The reasons provided by the ALJ for rejecting Dr. Aguilar's opinions regarding Plaintiff's limitations are specific, but not entirely legitimate. The ALJ's primary reason for rejecting Dr. Aguilar's opinions regarding Plaintiff's limitations -- that these limitations were inconsistent with Dr. Aguilar's treatment records -- is belied by the record. For instance, despite the ALJ's assertion to the contrary, Dr. Aguilar's treatment notes show that Plaintiff has

---

[2]   A GAF of 31-40 indicates "[s]ome impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school)." Diagnostic and Statistical Manual of Mental Disorders Text Revision, 34 (4th ed. 2000) ("DSM-IV-TR").

consistently reported depression, as well as auditory hallucinations.[3]
Further, although the ALJ emphasizes that Plaintiff did not receive bi-
weekly treatment consistently since 1996, he fails to acknowledge that
the record as a whole nevertheless shows that Plaintiff sought treatment
regularly and consistently for her mental impairment during the relevant
time period.[4]  *See, e.g.*, <u>Gallant v. Heckler</u>, 753 F.2d 1450, 1456 (9th
Cir. 1984)(holding that it was error for an ALJ to ignore or misstate
the competent evidence in the record in order to justify his
conclusion).   Finally, while not determinative of disability, Dr.
Aguilar's assessment of Plaintiff as having a GAF score of 38 is
indicative of Plaintiff's significant symptoms and limitations.

The ALJ's suggestion that certain questionnaires attributed to Dr.
Aguilar may not be authentic appears to be based on speculation that
could, and should, have been avoided by proper development of the
record.  Indeed, although on remand the ALJ had the opportunity, and the
obligation under the remand order, to re-contact Dr. Aguilar to confirm

---

[3]   A.R. 448 -- October 25, 2001, and December 6, 2001 treatment notes, indicating depression and auditory hallucinations; 450 – July 24, 2001, and September 4, 2001 treatment notes, indicating depression and auditory hallucinations; 451 – May 31, 2001, and June 14, 2001 treatment notes, indicating depression and auditory hallucinations; 606 -- May 10, 2004 treatment note, indicating depressed mood; 607 -- April 7, 2004 treatment note, indicating auditory hallucinations and depression; 608 -- January 6, 2004, and February 23, 2004 treatment notes, indicating depression and auditory hallucinations; 609 -- August 29, 2003, and October 10, 2003 treatment notes, indicating depression and auditory hallucinations; 611 -- February 23, 2003, and April 10, 2003 treatment notes, indicating depression and auditory hallucinations; 612 -- April 25, 2002, and January 7, 2002, treatment notes, indicating depression and auditory hallucinations; 613 -- August 22, 2002, and October 3, 2002 treatment notes, indicating depression and auditory hallucinations.

[4]   In addition, Dr. Aguilar explained in her August 20, 1998 evaluation that Plaintiff stopped treatment for a period in 1996, but returned for treatment thereafter.  (A.R. 287.)

the authenticity of her opinions, the ALJ failed to do so.  While there may appear to be differences between the handwriting in Dr. Aguilar's treatment notes and her signatures on questionnaires/evaluations, her signature on the September 21, 2004 evaluation does not appear to be wholly different from the signature on her treatment notes.  Regardless, even if Dr. Aguilar did not specifically write the observations set forth in the handwritten portions of the 1998 and 2004 evaluations, it would be appropriate for her to "adopt" the observations made by one of her social worker or counselor colleagues by signing the forms.  *See* Gomez v. Chater, 74 F.3d 967, 971 (9th Cir. 1996).

Critically, however, aside from the issues of whether Dr. Aguilar's 1998 and 2004 evaluations are consistent with Plaintiff's treatment records and authentic, those evaluations fail to set forth whether Dr. Aguilar was considering Plaintiff's alcohol abuse when she rendered her opinions.  Certainly, Plaintiff has exhibited severe symptoms, such as suicidal tendencies and hallucinations, during periods while she was using alcohol.[5]  Although it is not clear whether Dr. Aguilar considered Plaintiff's alcohol abuse when rendering her opinion in the evaluations, it is apparent from the treatment notes signed by Dr. Aguilar that she was aware of Plaintiff's alcohol abuse.[6]

---

[5]    A.R. 430-31 -- St. Francis Medical Center June 3, 1996 admission notes, observing "possible drug overdose with suicidal tendency" and diagnosing possible drug overdose with alcohol overdose, intoxication; 455-59 -- December 11, 1997 Los Angeles County Adult Initial Assessment, indicating that Plaintiff admitted drinking alcohol and had problems with quitting and noting visual and auditory hallucinations, impaired intellectual functioning, impaired memory, impaired concentration, and suicidal ideation.

[6]    *See* A.R. 474 -- April 26, 2001 treatment notes; 539 -- March 13, 2002 treatment notes; 542 - December 12, 2001 treatment records.

1

2

3          Under the Social Security Regulations, a claimant is not eligible
4    to receive disability benefits if drug or alcohol addiction is a
5    "contributing factor material to a determination of disability."  20
6    C.F.R. § 416.935.  The "key factor ... in determining whether alcoholism
7    or drug addiction is a contributing factor material to the determination
8    of a disability" is "whether an individual would still be found disabled
9    if she stopped using alcohol or drugs."  Sousa v. Callahan, 143 F.3d
10   1240, 1245 (9th Cir. 1998).

11

12         When such a substance abuse issue exists, the ALJ must perform a
13   two-step analysis.  First, the ALJ must evaluate which of the claimant's
14   physical and mental limitations would persist if the claimant refrained
15   from drug and alcohol use.  Second, the ALJ must determine whether the
16   claimant's remaining limitations would be disabling.  20 C.F.R. §
17   416.935(b).  It is not proper to conclude simply that substance abuse is
18   a contributing factor material to the determination of disability
19   without distinguishing between the substance abuse contributing to the
20   disability and the disability remaining if the Plaintiff stopped using
21   drugs or alcohol.  Sousa, 143 F.3d at 1245 (reversing and remanding case
22   for the ALJ to determine whether claimant's disability would have
23   continued if she stopped using drugs and alcohol).  In addition, "[i]n
24   materiality determinations pursuant to 42 U.S.C. § 423(d)(2)(C), the
25   claimant bears the burden of proving that his alcoholism or drug
26   addiction is not a contributing factor material to his disability
27   determination."  Ball v. Massanari, 254 F.3d 817, 820 (9th Cir. 2001).

28

The question of whether Plaintiff's mental impairment would continue to be "severe" in the absence of alcohol abuse is critical here and remains unanswered.  No opinion has been rendered by Plaintiff's treating physician (*i.e.*, Dr. Aguilar or another of Plaintiff's treating physicians) regarding the extent of Plaintiff's psychological limitations absent alcohol abuse.  Similarly, no opinion has been rendered by any consultative examiner regarding Plaintiff's psychological limitations absent substance abuse.

Following the Appeals Council's December 10, 2003 Remand Order, on March 11, 2004, consultative examiner Margaret Donohue, Ph.D., DABFE, FACFE, opined that:  Plaintiff has "marked" or "extreme" limitations in her ability to:  understand and remember short, simple instructions; carry out short, simple instructions; understand and remember detailed instructions; carry out detailed instructions; make judgments on simple work related decisions.  (A.R. 574.)  More specifically, Dr. Donohue concluded that:

> [Plaintiff] is not able to adequately interact
> appropriately with the public.  She cannot interact
> appropriately with supervisors.  She cannot interact
> appropriately with coworkers.  She is not able to respond to
> pressure.  She cannot respond appropriately to changes in a
> routine.  She is not competent to manage funds on her behalf
> and this may be the result of substance use and I am not able
> to adequately ascertain that at the present time without
> knowing what is causing her present state and whether or not
> that is alcohol-related.  *I cannot determine whether or not*

1    *alcohol is contributing to her limitations and whether or not*

2    *if she ceased the use of alcohol, her limitations would*

3    *improve.* (emphasis added).

4

5    (A.R. 572.)   Thus, while Dr. Donohue concluded that Plaintiff's

6    psychological impairments were certainly greater than *de minimis*, she

7    was unable to determine whether Plaintiff's limitations would improve if

8    she ceased the use of alcohol.

9

10        Further, in consultative examiner Nathan Lavid, M.D.'s March 13,

11   2004 opinion, he concluded that "based on [Plaintiff's] medical record

12   review and her report it appears that her psychotic and depressive

13   symptoms have impaired her ability to function," and she would "be best

14   served by entering the workforce on a part-time basis."   (A.R. 580.)

15   Nowhere in his report does Dr. Lavid address the issue of Plaintiff's

16   psychological impairments absent alcohol abuse.

17

18        As set forth above, the ALJ erred in rejecting Dr. Aguilar's

19   opinions regarding Plaintiff's alleged mental impairment; his contention

20   that they are inconsistent with treatment records is not entirely

21   accurate, and his suspicions of inauthenticity should have been resolved

22   through development of the record. Webb v. Barnhart, 433 F.3d 683, 687

23   (9th Cir. 2005)(*citing* Tonapetyan v. Halter, 242 F.3d 1147, 1150 (9th

24   Cir 2001))(ALJ's duty to supplement the record may be triggered by

25   ambiguous evidence); *see also* 20 C.F.R. § 416.919a(b)(listing situations

26   requiring a consultative examination, such as a conflict, inconsistency,

27   ambiguity, or insufficiency in the evidence); 20 C.F.R. § 416.917 (when

28   a claimant's medical sources provide insufficient evidence to determine

17

whether the claimant is disabled, a consultative examination may be ordered); *see* also 20 C.F.R. § 416.912(e)(duty to re-contact treating physician); Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) (requirement in 20 C.F.R. § 416.912(e) that the Commissioner re-contact treating sources is triggered where the information from the treating sources is inadequate to make a determination regarding disability). Critically, neither Dr. Aguilar (or any other of Plaintiff's treating physicians) nor the two consultative examiners (Drs. Donohue and Lavid) have opined on whether or not Plaintiff's mental impairment would remain "severe" in the absence of alcohol abuse. Accordingly, further development of the record on this issue is required.

For the reasons set forth above, the Court finds that reversible error occurred, warranting remand. *See, e.g.,* Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004)(when ALJ erred by discounting treating physicians' opinions, remand for further proceedings is appropriate if enhancement of the record would be useful); Higbee v. Sullivan, 975 F.2d 558, 561-62 (9th Cir. 1991)(remanding case in order to develop the record); McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989)(remand appropriate to remedy defects in the record).

**CONCLUSION**

Accordingly, for the reasons stated above, the denial of benefits is REVERSED, and this case is REMANDED for further proceedings consistent with this Memorandum Opinion and Order. Judgment shall be entered reversing the decision of the Commissioner, and remanding the matter for further administrative action consistent with this Memorandum

18

1  Opinion and Order.

2

3      IT IS FURTHER ORDERED that the Clerk of the Court shall serve

4  copies of this Memorandum Opinion and Order and the Judgment on counsel

5  for Plaintiff and for Defendant.

6

7      **LET JUDGMENT BE ENTERED ACCORDINGLY.**

8

9  DATED: September 28, 2007

10

11                                         /s/

                                    MARGARET A. NAGLE
12  _____   UNITED STATES MAGISTRATE JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                  19